# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 9, 2013

## JEFFREY BOOTH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 07-07264    J. Robert Carter, Jr., Judge**

**No. W2012-01461-CCA-R3-PC  - Filed May 29, 2013**

Jeffrey Booth ("the Petitioner") was convicted by a jury of two counts of especially aggravated kidnapping, one count of aggravated robbery, and one count of aggravated assault.  Pursuant to a sentencing agreement, the trial court sentenced the Petitioner to an effective sentence of twenty years' incarceration.  On appeal, this Court merged the two especially aggravated kidnapping convictions.  The Petitioner subsequently filed for post-conviction relief, which the post-conviction court denied following an evidentiary hearing.  The Petitioner now appeals, arguing that the post-conviction court should have applied State v. White, 362 S.W.3d 559 (Tenn. 2012), retroactively.  He also contends that he received ineffective assistance of counsel.  Upon our thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Warren P. Campbell, Memphis, Tennessee, for the appellant, Jeffrey Booth.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy Weirich, District Attorney General; and Lessie Rainey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Petitioner was convicted by a Shelby County jury of two counts of especially aggravated kidnapping, one count of aggravated robbery, and one count of aggravated

assault. Pursuant to a sentencing agreement, the trial court sentenced the Petitioner to concurrent sentences of twenty years for each especially aggravated kidnapping conviction, eight years for his aggravated robbery conviction, and three years for his aggravated assault conviction, for a total effective sentence of twenty years' incarceration. On direct appeal, this Court merged the Petitioner's two convictions for especially aggravated kidnapping and remanded for corrected judgments. In all other respects, this Court affirmed the Petitioner's judgments. See State v. Jeffrey Booth, No. W2009-00452-CCA-R3-CD, 2010 WL 4621887, at *12 (Tenn. Crim. App. Nov. 15, 2010). To assist in the resolution of this proceeding, we repeat here the summary of the facts set forth in this Court's opinion resolving the Petitioner's direct appeal:

Brenda McKinnie, the cashier at the Wonder Bread Store in Memphis, Tennessee, testified that she was working at the store on July 3, 2007. At around 6:00 p.m. that day, she was helping the last three customers, two men and a woman, before she closed the store. The woman paid for her merchandise and left. One of the male customers, whom she identified at trial as [the Petitioner], made her nervous because he "kept going back and forth, back and forth, changing merchandise, which was a cupcake, right, going back getting the same thing." She said [the Petitioner] "was looking down, had his head down, [and] had a blue baseball cap on."

McKinnie said that [the Petitioner] allowed the last male customer, Mervin Bridges, to pay ahead of him. Bridges purchased his merchandise, and [the Petitioner] made his purchase. As Bridges was about to leave, [the Petitioner] said that he was going to exchange his cupcake but instead walked over to Bridges and brandished a knife, which he held up to Bridges's throat. [The Petitioner] brought Bridges back to the cash register and told McKinnie that he would kill Bridges if she did not give him the money out of the register. McKinnie opened the cash register, backed away, and [the Petitioner] reached over with his free hand and grabbed a total of $191 from the cash register. [The Petitioner] then told Bridges that they "were going to leave here together[.]" [The Petitioner] placed the knife at Bridges's back, and they left the store. McKinnie immediately called 9-1-1. Moments later, she saw [the Petitioner] "limping across Jackson Avenue going towards Lloyd Circle." McKinnie identified [the Petitioner] as the perpetrator when the police brought him back to the store approximately thirty minutes after the crime occurred. Although McKinnie stated that [the Petitioner] was wearing a white shirt and a blue baseball cap when the incident occurred, she said that he was wearing a fuchsia shirt and no baseball cap when she identified him in the back of the police car.

Mervin Bridges testified that once he and [the Petitioner] left the store, [the Petitioner] walked him out to Bridges['] work van, and Bridges informed him that his workers were in the van. Once [the Petitioner] saw the workers, including an employee by the name of Terry Palony, he fled. [The Petitioner] was able to escape, although Bridges and his workers attempted to follow him. Shortly thereafter, Bridges identified [the Petitioner], who was sitting in a police car, as the perpetrator. Bridges said that [the Petitioner] had changed from a white shirt to a red one, removed his baseball cap, and attempted to comb his hair to conceal his identity. Bridges and his employee Terry Palony identified [the Petitioner] as the perpetrator at trial. However, Palony testified that [the Petitioner] was wearing a red shirt during the incident but had on a white one at the time of his arrest.

Officer William Gray of the Memphis Police Department testified that he and several other officers responded to [a] call of an armed robbery at the Wonder Bread Store. When Officer Gray found [the Petitioner] in a nearby neighborhood, [the Petitioner] threw "a wad of money" into the air. Following [the Petitioner]'s arrest, Officer Gray discovered a Hostess Cupcake on or near [the Petitioner]'s person. The money [the Petitioner] had thrown was collected and totaled $191. Officer Gray identified [the Petitioner] at trial as the individual that threw the money prior to his arrest. Officer Jeffrey Garey of the Memphis Police Department testified that he discovered "a silver colored knife with white cloth wrapped around the handle" in a yard near where [the Petitioner] was taken into custody. The knife did not contain any latent fingerprints.

Id. at *1-2.

The Petitioner subsequently filed for post-conviction relief, alleging multiple instances of ineffective assistance of counsel at trial ("trial counsel"). Although the Petitioner claimed numerous instances of deficient performance in the post-conviction court, he has raised only three issues on appeal: that trial counsel failed to impeach Mervin Bridges at trial; that trial counsel failed to investigate and present evidence regarding the Petitioner's voluntary intoxication; and that trial counsel failed "to obtain the Petitioner's consent to the sentencing agreement." Additionally, the Petitioner claimed at the post-conviction hearing and on appeal that, under State v. White, 362 S.W.3d 559, he is entitled to a new trial. Accordingly, we will address only the facts adduced at the post-conviction hearing relevant to these issues.

At the post-conviction hearing, the Petitioner initially requested a continuance of the hearing in order to call additional witnesses. His counsel at the post-conviction hearing ("post-conviction counsel") stated that he "found absolutely no reason to have [the alleged

witnesses] here based on statutory grounds," and, accordingly, the post-conviction court denied the Petitioner's request for a continuance. The court, however, allowed the Petitioner the opportunity to testify regarding these potential witnesses, with the understanding that the court could decide to bifurcate the hearing so that such witnesses could be called if deemed necessary.[1]

The Petitioner testified that trial counsel never visited him at the jail prior to trial. According to the Petitioner, he sent trial counsel two certified letters "asking her to come down and discuss some of the cases and some of the legal facts, [but] she never did return [his] letters, or come down to see [him]." When asked if he discussed the contents of the letters with trial counsel, the Petitioner responded,

> Well, I kept wanting her to file motions to suppress a statement that I made that was coerced and I was given inducements to make the statement. And she kept telling me that she was not going to file the motions. And there were other motions that I wanted her to file, as far as the identification, because the guy who was robbed described a perpetrator of being five-foot-eight to five-foot-ten, 165 lbs. to 175 lbs. And at the time of arrest I was six-foot-one and weighed 220 lbs. to 225 lbs.
>
> And he said I had long hair. And the booking picture clearly showed that I had short hair. And I had a full beard, nobody ever mentioned anything about the beard. And I kept trying to tell her this, but she would tell me that she wasn't going to file frivolous motions.

The Petitioner stated that trial counsel would not explain to him why she would not file the motions. He agreed that the State did not use his statement as evidence at trial. According to the Petitioner, trial counsel never discussed with him the theory for the defense or possible defenses. Specifically, trial counsel never discussed an intoxication defense with him. The Petitioner confirmed that he received discovery in this case.

Prior to trial, the Petitioner requested that trial counsel

> subpoena the 9-1-1 tapes, which would . . . have allowed me to hear . . . the description [that] the woman gave, because her description was totally

---

[1] At the conclusion of the testimony at the hearing, the post-conviction court noted that trial counsel had admitted to not speaking with these additional witnesses prior to trial and had explained her reasoning for not doing so. Regarding one particular witness, Jennifer Porter, the Petitioner admitted that he had no way of contacting her if the court were to continue the hearing. Accordingly, the post-conviction court found it unnecessary to continue the hearing.

different from what the man gave. There were two different sets of descriptions, two different types of hats, or colors of hats. The clothing was different. I was wearing a red shirt. The person that brought them [sic] was in a white shirt.

Following the trial, the Petitioner "was made aware" of a sentencing agreement between the State and trial counsel. The Petitioner stated, "I told [trial counsel] that I wanted to have a sentencing hearing and I wanted to bring out the mitigating factors, since there was going to be some enhancement factors that I wanted the sentencing hearing." However, the mitigating factors were not included as part of the sentencing agreement.

The post-conviction court questioned the Petitioner regarding his allegations. The Petitioner agreed that, in the times that he met with trial counsel, he told her everything he knew regarding the case. The Petitioner told the court that the State did not provide him with ten photographs that "could have been exculpatory."

Trial counsel testified that she was appointed to the Petitioner's case on October 7, 2007. She was then on sick leave for approximately three and a half months due to a surgery. Although she could not remember how many times she met with the Petitioner prior to trial, she knew she "met with him all of these times over in Court, as well as in the jail, also, especially right before trial." Trial counsel remembered receiving the two letters from the Petitioner. One letter requested that she subpoena the officers that were involved in the Petitioner's arrest and transport, as well as the radio transmissions from the police cars. Trial counsel confirmed that she attempted to retrieve this information. The other letter requested that she subpoena the EMTs who had transported him to the hospital. However, trial counsel stated that she did not comply with this request because she "had photos and his medical records of what his injuries were. And they were just kind of like abrasions and cuts. It wasn't anything serious."

Trial counsel stated that she filed the following motions on behalf of the Petitioner:

It was a motion for disclosure of impeaching information. Rule 12 motions. Motions to request the arrest histories of all potential state witnesses. Motion for pretrial Morgan hearing. Motion for production of police reports. Memorandum of authorities in support of a motion for exculpatory evidence. Motion reserving the right to file additional motions in this cause. Motion for notice of the state's intention to use evidence. Motion to set and dispose of motions prior to trial. Memorandum of points and authority in support of a motion for witness statements. As well as motion to suppress his statement and motion for new trial.

-5-

Trial counsel stated that she never actually argued the motion to suppress because the State decided not to introduce the Petitioner's statement at trial. On cross-examination, trial counsel confirmed that the "main issue" in the case was the identity of the perpetrator. She remembered that an individual named Mervin Bridges testified at the trial. Trial counsel identified from the preliminary hearing transcript that Bridges testified that the Petitioner "had very long hair at the time that he identified him." She also identified, from the trial transcript, Bridge's testimony that he did not remember making the prior statement at the preliminary hearing. Trial counsel confirmed that she did not impeach Bridges with his statement from the preliminary hearing but that she "asked him more questions regarding" the testimony.

Trial counsel testified that the State extended a plea offer prior to trial for thirteen and a half years at 100%. She explained to the Petitioner that, if convicted, the minimum sentence he would receive from the trial court would be twenty years. Despite this explanation, the Petitioner wanted to proceed to trial. Trial counsel later confirmed that the trial court could have sentenced the Petitioner to a maximum of thirty-three years.

Trial counsel acknowledged that the Petitioner asked her about the possibility of a voluntary intoxication defense but stated that she "didn't feel that it would apply to our situation." She also agreed that she entered into a sentencing agreement with the State, after discussion with the Petitioner. Post-conviction counsel asked her if the Petitioner agreed to the sentencing agreement, and trial counsel responded, "Yes, I believe so, he was sentenced to it, so I am assuming that he did." Post-conviction counsel then asked whether she was sure, and trial counsel stated, "I can't remember the conversation about it, but I don't think he wanted the Judge to sentence him knowing that the Judge would have to start at twenty and the enhancing factors that were proved in trial, . . . he would have possibly gotten twenty five." To the best of her recollection, however, the Petitioner agreed to the sentencing agreement. Trial counsel did not submit mitigating factors as part of the agreement.

The post-conviction court asked trial counsel whether she felt that the Petitioner told her everything he knew regarding the case. Trial counsel responded, "Yes. Well, . . . the statement he gave to the police was contrary to what he was telling me. But, you know, I based the defense on . . . identity because after he said it wasn't him, so I just went with that."

At the conclusion of the hearing, the post-conviction court took the matter under advisement and subsequently issued a written order denying relief. In its order, the post-conviction court stated,

> [W]hen a sentence is agreed upon, it would be better if the [Petitioner] signed
> the Judgment sheets in the space provided. This was not done in the case at
> hand. A review of the cross examination may have shown areas that the

Petitioner would now suggest could have been done better. The overall proof shows that counsel attacked the identifications at the trial, but the Jury accredited the State's witnesses.

Neither of these matters rises to the level of rendering the conviction or sentence void or voidable.

The record shows that trial counsel was aware of the theory of defense. The "mistaken identity" theme was put forth at every step of the trial. The jury simply accredited the State's witnesses. This does not automatically imply a failure on behalf of trial counsel.

. . . .

In this matter, Petitioner has failed to prove that any of the so-called failings on the part of trial counsel have prejudiced him.

Thus, the post-conviction court denied relief. The Petitioner timely appealed. He argues that the post-conviction court should have applied State v. White, 362 S.W.3d 559 (Tenn. 2012), retroactively. He also contends that he received ineffective assistance of counsel.

## Analysis

### *Standard of Review*

Relief pursuant to a post-conviction proceeding is available only when the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Retroactivity of* <u>White</u>

The Petitioner first contends that he is entitled to post-conviction relief under <u>State v. White</u>, despite the fact that <u>White</u> itself stated that its holding did not "require retroactive application." 362 S.W.3d at 578. Further, he argues that he should receive a new trial so that the jury may "evaluate the charges with enhanced instructions." We first note that the Petitioner was convicted in 2008, and his convictions were affirmed in 2010, see <u>Jeffrey Booth</u>, 2010 WL 4621887, at *12, long before the Tennessee Supreme Court decided <u>White</u> in 2012. In <u>White</u>, our supreme court stated,

> Our decision, therefore, should not be construed as creating a new standard for kidnapping. Instead, we are merely providing definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty. . . . In consequence, our ruling does not articulate a new rule of constitutional law or require retroactive application.

362 S.W.3d at 578.

Based on our supreme court's express holding to the contrary, we will not apply <u>White</u> retroactively to this case. This issue is without merit.

*Ineffective Assistance of Counsel*

The Petitioner also argues that he was denied effective assistance of counsel. The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[2] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>see also</u> <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. <u>See</u> Tenn. Code Ann. § 40-30-103; <u>Pylant</u>, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>Goad v. State</u>, 938

---

[2] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. <u>See</u> <u>Gideon v. Wainwright</u>, 372 U.S. 335, 342 (1963); <u>State v. Howell</u>, 868 S.W.2d 238, 251 (Tenn. 1993).

S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our supreme court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden, 816 S.W.2d at 60. We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

<u>Failing to Impeach Mervin Bridges</u>

The Petitioner first asserts that trial counsel failed "to impeach Mervin Bridges with his prior testimony" at trial.[3] The State responds that the Petitioner has failed to include the entire transcripts from the preliminary hearing or the trial and that it is impossible to review or address this issue from the limited portion submitted. Alternatively, the State argues that trial counsel adequately questioned Bridges regarding his inconsistent testimony between the preliminary hearing and trial.

In its order denying relief, the post-conviction court stated, "A review of the cross examination may have shown areas that the Petitioner would now suggest could have been done better. The overall proof shows that counsel attacked the identifications at the trial, but the Jury accredited the State's witnesses." Accordingly, the court determined that this issue did not "rise[] to the level of rendering the conviction or sentence void or voidable."

The evidence does not preponderate against the post-conviction court's findings. Although the Petitioner failed to include the entire cross-examination of Bridges, we find that the portion of the transcript submitted provides sufficient testimony to establish that trial counsel, in fact, did question Bridges regarding his inconsistent testimony. To the extent the Petitioner contends that trial counsel should have impeached Bridges, rather than question him as she did, we "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>Honeycutt</u>, 54 S.W.3d at 767 (quoting <u>Strickland</u>, 466 U.S. at 689). Therefore, the Petitioner has failed to establish deficient performance on the part of trial counsel in this regard. Thus, we do not need to address the prejudice prong. <u>See</u> <u>Goad</u>, 938 S.W.2d at 370. Accordingly, the Petitioner is entitled to no relief on this basis.

<u>Voluntary Intoxication</u>

The Petitioner also asserts that trial counsel was ineffective in "not investigating and presenting evidence to the jury on the [Petitioner's] voluntary intoxication." The State, in response, argues that trial counsel's testimony established that she discussed with the Petitioner an intoxication defense. However, trial counsel did not believe it to be a "viable" defense and, therefore, instead utilized the theory of "mistaken identity."

_____

[3] We note that the Petitioner titles this issue as follows: "Trial counsel was ineffective for failing to impeach *Brenda McKinney's* identification of the Defendant." (Emphasis added). The analysis section, however, solely discusses the testimony of Mervin Bridges, rather than Brenda McKinney. Accordingly, we will address only the issue pertaining to the testimony of Mervin Bridges.

We agree with the State. The post-conviction court stated in its order denying relief, "The record shows that trial counsel was aware of the theory of defense. The 'mistaken identity' theme was put forth at every step of the trial. The jury simply accredited the State's witnesses. This does not automatically imply a failure on behalf of trial counsel."

Once again, the evidence does not preponderate against the post-conviction court's findings. At the post-conviction hearing, trial counsel acknowledged that the Petitioner asked her about the possibility of a voluntary intoxication defense but stated that she "didn't feel that it would apply to our situation." Later, she testified, "But, you know, I based the defense on . . . identity because after he said it wasn't him, so I just went with that." Given that the defenses of "mistaken identity" and voluntary intoxication are inconsistent, it is clear that trial counsel chose the defense that she thought was most applicable. Once again, we will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden, 816 S.W.2d at 60. Thus, we conclude that trial counsel was not deficient in this regard. Therefore, we need not address the prejudice prong. See Goad, 938 S.W.2d at 370. Accordingly, the Petitioner is entitled to no relief on this issue.

Sentencing Agreement

Finally, the Petitioner argues that trial counsel was ineffective in "failing to obtain the Petitioner's consent to the sentencing agreement." The post-conviction court, in denying relief, stated, "[W]hen a sentence is agreed upon, it would be better if the [Petitioner] signed the Judgment sheets in the space provided. This was not done in the case at hand." Nevertheless, the court found that this issue did not "rise[] to the level of rendering the conviction or sentence void or voidable."

In addressing this issue, we first will look at the deficiency prong. When trial counsel was asked at the post-conviction hearing whether the Petitioner agreed to the sentencing agreement, she stated, "Yes, I believe so, he was sentenced to it, so I am assuming he did." Later, she stated that she "couldn't remember the conversation about it," but, to the best of her recollection, the Petitioner agreed to the sentence. We note that the Petitioner did not include a transcript of his sentencing hearing, but we have reviewed that transcript as part of his appellate record on direct appeal. See Harris v. State, 301 S.W.3d 141, 147 n. 4 (Tenn. 2010) ("The Court may take judicial notice of its own records.") (citing State v. Lawson, 291 S.W.3d 864, 869-70 (Tenn. 2009)). Upon review, we find that, in trial counsel's opening remarks at the sentencing hearing, she stated,

> Your Honor, [the Petitioner] is set for sentencing today. Last week he was set for sentencing and I had indicated that the state and I had come to an agreement on 20 years. He was convicted of especially aggravated

-11-

kidnapping. And [the Petitioner] was not in agreement with that and you instructed him to file his grievances in a motion, which I believe he's done.

The transcript reflects that the trial court then relieved trial counsel from further representation of the Petitioner and appointed the Petitioner a new attorney ("new counsel") to represent him in his motion for new trial and direct appeal. However, the trial court accepted the sentence agreed upon by the State and trial counsel. The trial court stated,

> But pursuant to the agreement, I'll sentence him to the 20-year sentence at 30 percent. And appoint [new counsel] to represent him on his motion for new trial. And because of the charges of accusations against the public defender's office, I'll just relieve you at this point and let [new counsel] prepare his motion for new trial. He can include the sentencing. . . . But he can inculpate [sic] in – do you understand what I'm saying, [Petitioner]? We're going to appoint another lawyer to represent you, sir, on your motion for new trial. And he can include in that motion for new trial all of these matters that you've alleged. . . . And [the Petitioner will] get an opportunity to have his day in court with the motion for new trial. And the sentencing itself can be attacked in the motion for new trial in spite of the agreement. So he's got another opportunity to have another court look at all of this.

The record is void of any colloquy with the Petitioner acknowledging his consent or desire to enter into the sentencing agreement between the State and trial counsel. To the contrary, the record indicates that the trial court believed that the Petitioner wished to attack this sentence. Accordingly, we hold that trial counsel was deficient in not obtaining consent from the Petitioner before entering into this sentencing agreement with the State.[4]

Having found deficient performance, we must assess whether the Petitioner suffered prejudice as a result of this deficient performance. This Court has held that "[a] reasonable probability of being found guilty of a lesser charge, *or a shorter sentence*, satisfies the second prong in Strickland." State v. Zimmerman, 823 S.W.2d 220, 225 (Tenn. Crim. App. 1991) (emphasis added) (citing Chambers v. Armontrout, 907 F.2d 825, 832 (8th Cir. 1990)). We note that the trial court sentenced the Petitioner, as a Range I offender, to the middle of the range for his especially aggravated kidnapping conviction. See Tenn. Code Ann. § 40-35-112(a)(1) (2006) ("A 'Range I' sentence is as follows: (1) For a Class A felony, not less than fifteen (15) nor more than twenty-five (25) years[.]"). We also note that the State introduced numerous enhancement factors at the sentencing proceeding, and trial counsel did not

---

[4] We note that the Defendant did not raise on direct appeal any issue regarding the trial court's error of imposing a sentence without conducting a sentencing hearing pursuant to Tennessee Code Annotated sections 40-35-201, -203, and -209 (2006).

introduce any mitigating factors. Furthermore, the Petitioner has not established on post-conviction that certain mitigating factors existed which should have been introduced at sentencing, even though he testified that "he wanted to bring out some mitigating factors." Finally, the trial court ran all of the sentences concurrently for an effective sentence of twenty years. Thus, the Petitioner cannot and has not shown that, but for trial counsel's deficient performance, there is a reasonable probability that he would have received a shorter sentence. Accordingly, the Petitioner is entitled to no relief on this issue.

## CONCLUSION

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE